UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | } |
| | } |
| v. | } Case No.: 4:19-cr-00092-RDP-GMB-1 |
| | } |
| **JONATHAN GARY ODOM,** | } |
| | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

This case is before the court on Defendant Jonathan Gary Odom's motion to suppress evidence obtained during the warrantless search of a vehicle. (Doc. # 17). For the reasons explained below, the motion is due to be denied.

**I. Background**

The court held a hearing on Odom's suppression motion on June 17, 2019. Based on the testimony and evidence presented at the hearing, the court finds the following facts.

On June 22, 2018, Officer Jesse White of the Fort Payne Police Department was assigned to patrol an area near Stewart Circle Court and Godfrey Avenue in Fort Payne, Alabama. (Docs. # 35 at 8; 31-4 at 1). Officer White, who has lived in Fort Payne for about 40 years, knew the neighborhood to be "a very high crime area" and testified that "it used to be one of the worst . . . in our city, actually." (Doc. # 35 at 9). He was patrolling the neighborhood in part because police had received "a few complaints about some drug activity going on in that area." (*Id.* at 10).

At around 5:30 a.m., while driving north on Godfrey Avenue, Officer White noticed a vehicle driving on Stewart Circle Court come to an extremely hard stop at the stop sign at the intersection of Stewart Circle Court and Godfrey Avenue. (*Id.* at 10-11; Doc. # 31-4 at 1). As

Officer White passed the vehicle, it pulled out behind him on Godfrey Avenue. (Doc. # 35 at 11). Viewing the vehicle in his rear view mirror, Officer White observed the car come to almost a complete stop in the road behind him. (*Id.*). As he continued north on Godfrey Avenue, Officer White observed the vehicle turn right on 11th Street without giving a turn signal. (*Id.*). Officer White then made a U-turn and headed south on Godfrey Avenue, back toward 11th Street. (*Id.*).

When Officer White turned left on 11th Street, he almost immediately met the vehicle, which was traveling in the opposite lane back toward Officer White and Godfrey Avenue. (*Id.* at 11-12). Officer White concluded that the vehicle had made a U-turn on 11th Street shortly after turning onto that road and was now heading back toward Godfrey Avenue. (*Id.* at 12).

After passing the vehicle on 11th Street, Officer White made a U-turn and observed the vehicle run the stop sign at 11th Street and Godfrey Avenue "at a high rate of speed" and without giving a turn signal. (*Id.* at 12-13). Suspicious, Officer White pursued the vehicle in his marked patrol car. (*Id.* at 13). As he reached the intersection of 11th Street and Godfrey Avenue, Officer White observed the vehicle turning onto Steward Circle Court "at a very high rate of speed." (*Id.*).

Stewart Circle Court is the entrance to an apartment complex. (*Id.*; Doc. # 31-4). When the vehicle entered the complex, it was moving "very fast." (Doc. # 35 at 13-14). Upon entering the complex, Officer White observed the vehicle "pretty much sliding into a stop" and activated the lights on his patrol car. (*Id.* at 14). As Officer White approached the vehicle in his patrol car, the vehicle's driver (later determined to be Defendant Odom) exited the vehicle, looked at Officer White, and took off running behind a building in the apartment complex. (*Id.*).

Officer White exited his patrol car and pursued Odom on foot. (*Id.*). While chasing Odom, Officer White observed him throw something, though he could not identify what came

2

out of Odom's hand.¹ (*Id.*). As he was chasing Odom, Officer White also noticed a female passenger in Odom's vehicle, with the passenger door open. (*Id.* at 15). Officer White ordered her to stay in the car as he ran by. (*Id.*). Officer White ultimately apprehended Odom in an open field in view of the vehicle. (*Id.*). Officer White ordered Odom onto the ground with his hands behind his head, drew his firearm, and kept both Odom and the female passenger in view while waiting for backup to arrive. (*Id.*).

Backup arrived in short order and another officer, Sergeant Jones, helped Officer White handcuff Odom. (*Id.* at 16). While Sergeant Jones and Officer White handcuffed Odom, another officer, Nicholas Hill, approached the passenger door of the vehicle, where the female passenger remained seated. Officer Hill directed the female passenger (later determined to be Alena Benson) to step out of the car and place her hands behind her back. After handcuffing Benson, Officer Hill led her to a nearby sidewalk and directed her to have a seat.

Officer Hill then asked Benson several questions, which prompted her to tell him that there was a large amount of "dope" in the car and that the dope might be in one of Odom's bags.² Officer Hill also asked Benson who the car belonged to, and she responded that it belonged to her.³ Officers at the scene confirmed that the vehicle was registered to a person with the last

---

¹ Sergeant Jones later recovered some pills and a hypodermic needle outside the vehicle that are believed to be the objects thrown by Odom. (Doc. # 35 at 54-55).

² As recorded on Officer Hill's dashboard camera (Defendant's Exhibit No. 6), Officer Hill asked Benson, "How much dope's in the car though?" Benson responded: "I don't know how much he bought." She then proceeded to converse further with Officer Hill regarding the "dope" in the car, telling him that she and Odom went to Rome, Georgia, to buy dope. Though the audio from Officer Hill's dashboard camera makes it difficult to hear Benson's speech at times, Officer Hill confirmed during his live testimony that Benson told him "that there was a large quantity of methamphetamine in the vehicle." (Doc. # 35 at 86). This testimony is consistent with the dashboard camera video. The court credits Officer Hill's testimony and finds that, prior to the search of the vehicle, Benson told him there were illegal drugs in the vehicle.

³ Again, though the dashboard camera footage at times makes it difficult to hear Benson's responses to Officer's Hill's questions, Officer Hill confirmed under oath that Benson "advised it was her car." (Doc. # 35 at 91). This is consistent with the dashboard camera video. The court credits Officer Hill's testimony and finds that Benson told him the car belonged to her.

3

name of "Benson." (Doc. # 35 at 90-91). Finally, Officer Hill asked Benson if she would mind if he searched the car to look for the dope, and she gave her consent to the search.[4]

Officer Hill then proceeded to search the car. During the search, he found a black backpack containing approximately 78.4 grams of methamphetamine. (Doc. # 30-2 at 2). The backpack also contained a traffic citation belonging to Odom and a pair of size 32x34 men's blue jeans, which were consistent with Odom's size. (*Id.*). Officers also found other drug-related evidence and paraphernalia in the vehicle. (*Id.*; Doc. # 35 at 82-83).

Odom has moved to suppress all of the evidence recovered from the search of the vehicle on grounds that the search violated the Fourth Amendment. (Doc. # 17).

II.  **Analysis**

The court divides its analysis in three parts. First, the court explains that Officer White had probable cause to believe Odom committed multiple traffic violations, which provided a lawful basis to stop Odom's vehicle. Second, the court explains that Officer Hill had probable cause to search the vehicle and backpack for drugs based on Benson's statements to him. Third and alternatively, the court explains that Benson's consent to the search also gave Officer Hill a lawful basis to search the vehicle. For all these reasons, Odom's motion to suppress is due to be denied.[5]

---

[4] Odom does not contest that Benson consented to the officers searching the car, but he does argue that her consent was not voluntary. (Doc. # 35 at 67). Whether consent was given voluntarily is a question of fact that must be determined based on the totality of the circumstances. *United States v. Spivey*, 861 F.3d 1207, 1212-13 (11th Cir. 2017). Here, based on Officer Hill's dashboard video footage and his live testimony at the hearing, the court readily finds that Benson's consent to the search was voluntary. Though Benson was detained when she gave her consent to the search, Officer Hill interacted with her in a professional, courteous manner and did not engage in any coercive or deceitful actions that could vitiate the voluntariness of Benson's consent.

[5] The government also argues that Odom lacks standing to challenge the search of the car and backpack because he abandoned the car and denied ownership of the backpack. (Doc. # 34 at 5-9). The court assumes, without deciding, that Odom has standing to challenge the search of both the car and backpack.

### A. Officer White Had a Lawful Basis to Stop the Car

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A traffic stop is a "seizure" within the meaning of the Fourth Amendment and therefore must not be "unreasonable." *See United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009). A traffic stop is constitutional under the Fourth Amendment "if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with" *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.*

Here, Officer White had probable cause to believe that Odom committed four different traffic violations: (1) failing to use a turn signal when he initially turn right on 11th Street from Godfrey Avenue, Ala. Code § 32-5A-133; (2) failing to use a turn signal when turning left on Godfrey Avenue from 11th Street, *id.*; (3) failing to stop at the stop sign at the corner of 11th Street and Godfrey Avenue before turning left on Godfrey, *id.* § 32-5A-112(b); and (4) driving a vehicle at a greater speed than was reasonable and prudent under the circumstances from the time Odom ran the stop sign at 11th Street and Godfrey Avenue until he "pretty much slid[] into a stop" at the Stewart Circle Court apartment complex, *id.* § 32-5A-170. Officer White therefore had a lawful basis to stop the car Odom was driving. *See United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) ("[L]aw enforcement may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles.") (internal quotation marks omitted).

### B. Officer Hill Had Probable Cause to Search the Car

A warrantless search of an automobile is constitutional under the Fourth Amendment if (1) the automobile is operational and (2) probable cause exists to believe that evidence of a crime is contained in the automobile. *United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003). Here, it is undisputed that the car was operational. The only question is whether the officers had probable cause to search the car.

Probable cause to search a vehicle exists "when there is a fair probability that contraband or evidence of a crime will be found in the vehicle under the totality of the circumstances." *United States v. Delva*, 922 F.3d 1228, 1243 (11th Cir. 2019) (internal quotation marks omitted). Based on the totality of the circumstances presented here, the court readily concludes that the officers had probable cause to believe the car contained evidence of a crime.

To begin with, Officer White was initially patrolling the area in part because police had received "a few complaints about some drug activity going on in that area." (Doc. # 35 at 10). When Officer White initiated his stop of Odom's vehicle, Odom fled on foot from Officer White and threw an unidentified object while fleeing. In combination with other circumstances, these facts increased the likelihood that Odom's car contained contraband or evidence of a crime. *See United States v. Jones*, 2012 WL 2568200, at *9 (M.D. Ala. June 15, 2012), report and recommendation adopted, 2012 WL 2568082 (M.D. Ala. July 3, 2012) (defendant's flight from law enforcement and throwing evidence out of car window supported conclusion that officers had probable cause to search defendant's vehicle); *United States v. Adigun*, 2011 WL 2194253, at *14 (N.D. Ga. May 4, 2011), report and recommendation adopted, 2011 WL 2198308 (N.D. Ga. June 3, 2011), aff'd, 567 F. App'x 708 (11th Cir. 2014) (finding defendant's flight from law enforcement relevant in probable cause determination).

Most significantly, however, Benson *told* Officer Hill that there were illegal drugs in the car. This alone is sufficient to establish probable cause to search the vehicle. Benson was an occupant of the vehicle immediately before the stop, and Officer Hill therefore had every reason to believe her statement was based on personal knowledge. Benson's statement, in combination with the surrounding circumstances, without question gave Officer Hill probable cause to search the vehicle for drugs.

Because Officer Hill had probable cause to search the vehicle for drugs, his search of the black backpack was also lawful. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). A backpack can easily conceal a substantial amount of illegal drugs, and Officer Hill's search of the backpack was therefore justified. *See United States v. Freire*, 710 F.2d 1515, 1523 (11th Cir. 1983) (holding that law enforcement's search of briefcases in the trunk of a car was lawful because the agents had probable cause to believe there was cocaine somewhere in the car).

### C. Alternatively, Benson's Consent Also Gave Officer Hill a Lawful Basis to Search the Car

Even if Officer Hill had lacked probable cause to search the car (and, to be clear, he had probable cause), his search would have been lawful in any event based on Benson's consent. "A search of property, without warrant or probable cause, is proper under the Fourth Amendment when preceded by valid consent." *United States v. Dunkley*, 911 F.2d 522, 525 (11th Cir. 1990). For consent to be valid, two conditions must be met: (1) the consent must be voluntary and (2) the person giving the consent must have authority to do so or must reasonably appear to have such authority. *Id.* As noted above, the court finds that Benson voluntarily consented to Officer

7

Hill searching the car for drugs. The only remaining question is whether Benson had actual or apparent authority to consent to the search.

Benson had both actual and apparent authority to consent to Officer Hill searching the car for drugs. It is well-settled that "a third party in sole possession and control of a vehicle clearly has the authority to consent to its search." *Id.* at 526. At the time Benson consented to the search, Odom had fled the vehicle and Benson was the only occupant of the vehicle in the immediate vicinity. She therefore had authority to consent to the search, regardless of who owned the vehicle.

But additionally, as noted above, the court finds that Benson told the officers the car belonged to her and that the officers confirmed on the scene that the car was registered to a person with the last name of "Benson." In addition to the driver of a vehicle, the person with primary possessory interest in a vehicle is authorized to consent to a search of the vehicle. *United States v. Zapata*, 180 F.3d 1237, 1241 (11th Cir. 1999) (explaining that both the lessee/passenger and driver of a vehicle have authority to consent to a search). Based on her statements to Officer Hill and the fact that the vehicle was registered to a "Benson," Benson reasonably appeared to the officers to be not merely a lessee but the *owner* of the car. Her consent to the search of the car was therefore valid and effective. *See United States v. Horton*, 488 F.2d 374, 380 n.6 (5th Cir. 1973) (holding that a person who was not the owner of a vehicle but possessed the vehicle's keys and represented that he was the owner was authorized to consent to a search of the vehicle).

## III. Conclusion

All of the evidence Odom seeks to suppress was lawfully obtained during the warrantless search of an automobile that was both supported by probable cause and authorized by the

voluntary consent of the vehicle's owner or apparent owner. Odom's motion to suppress (Doc. # 17) is therefore due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this July 17, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE